UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRANDON ENGLERT,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT,<br><br>　　　　　　　　　Defendant. | Case No. 2:22-cv-00774-MMD-EJY<br><br>ORDER |

**I.  SUMMARY**

Plaintiff Brandon Englert sued his employer, Defendant Las Vegas Metropolitan Police Department ("LVMPD"), for alleged employment discrimination, retaliation, hostile work environment, and other related claims. (ECF No. 1 ("Complaint").) Before the Court is Defendant's motion for summary judgment (ECF No. 37 ("Motion")).[1] As explained below, the Court grants the Motion as to Plaintiff's gender discrimination and intentional infliction of emotional distress ("IIED") claims and denies the Motion as to Plaintiff's retaliation and hostile work environment claims.

**II.  BACKGROUND**[2]

Plaintiff started working for LVMPD in 2006. (ECF No. 37-1 at 4; ECF No. 41-1 at 2.) In 2012, Plaintiff was assigned to the Vice Unit as a detective. (ECF No. 37-1 at 4; ECF No. 41-1 at 2.) As part of the Vice Unit, Plaintiff investigated crimes "primarily involving prostitution in or near casinos." (ECF No. 41-1 at 3.) The work involved working undercover as gamblers in casinos and consuming alcohol and gambling as part of the undercover persona. (*Id.*; ECF No. 37-6 at 3.) In 2017, LVMPD Sergeant Jennifer

---

[1]Plaintiff responded (ECF No. 41), and Defendant replied (ECF No. 45).

[2]The following facts are undisputed unless otherwise noted.

Benjamins was placed in charge of the Vice Unit and became Plaintiff's supervisor. (ECF No. 41-1 at 4.)

On March 19, 2018, Benjamins had a conversation with Plaintiff about her concerns that he was gambling with his personal money while on duty. (ECF No. 37-2 at 2.)

On March 25, 2018, Benjamins filed a Statement of Complaint with the Internal Affairs Bureau ("IAB") against Plaintiff and Detective Audrey Cognian ("March 25 SOC"). (ECF No. 37-8 at 2-3.) It stemmed from a March 1, 2018 complaint from a former suspect for interactions with Plaintiff and Cognian that occurred on February 27, 2018. (*Id.* at 3-4.) The March 25 SOC alleged that Plaintiff violated certain LVMPD regulations and procedures regarding interactions with the public, neglect of duty, and booking evidence and property. (*Id.* at 2.)

On April 4, 2018, Benjamins filed a Contact Report documenting the March 19, 2018 conversation with Plaintiff. (ECF No. 37-2 ("April 4 Contact Report").) A Contact Report is not considered discipline but a documentation of a conversation. (ECF No. 37-1 at 17.) The April 4 Contact Report also detailed incidents occurring on April 3, 2018 and April 4, 2018, during which Benjamins purportedly observed Plaintiff gambling on duty with no potential targets or other detectives around and later instructed that he not bring personal money into the casino while working, co-mingle his personal and work money, or gamble during work. (ECF No. 37-2 at 2-3.)

On April 8, 2018, Plaintiff received the April 4 Contact Report. (ECF No. 37-3 at 2.)

On April 11, 2018, Plaintiff met with Lieutenant Kristine Buist to discuss the April 4 Contact Report and general issues with Benjamins. (ECF No. 37-6 at 13.)

That same day, Plaintiff filed a Statement of Complaint with IAB against Benjamins, addressing the allegations in the April 4 Contact Report from his perspective and making allegations of unwanted sexual advances and remarks that Benjamins had made towards him and other general issues with working with Benjamins ("April 11 SOC"). (ECF No. 37-4 at 2-6.) In the April 11 SOC, Plaintiff indicated that he believed he was being treated

2

differently, disciplined, and retaliated against for refusing Benjamins's sexual advances. (*Id.* at 6.)

On April 23, 2018, a Lieutenant Brodeur filed a Statement of Complaint with IAB against Plaintiff regarding an incident in which he allegedly failed to conduct a proper search of an arrestee ("April 23 SOC"). (ECF No. 37-7 at 2-4.)

On April 24, 2018, the April 11 SOC was forwarded to the LVMPD Employment Diversity Section ("EDS") for investigation. (ECF No. 37-5 at 2.)

On April 29, 2018, Plaintiff filed a rebuttal to the April 4 Contact Report containing explanations of his conduct and responses to Benjamins's allegations similar to those found in the April 11 SOC. (ECF No. 37-3 at 2-4.)

EDS investigated the April 11 SOC against Benjamins and involving Buist. (ECF Nos. 37-5, 37-6.) On June 13, 2018, EDS found Plaintiff's allegations against Benjamins of sexual harassment and disparate treatment to be "not sustained"[3] and Plaintiff's allegations against Buist of failure to report or prevent sexual harassment to be "unfounded." (ECF No. 37-6 at 16-17.)

IAB investigated both the March 25 SOC and April 23 SOC against Plaintiff and found that he violated LVMPD Procedure 5/201.02 Booking Evidence & Property and LVMPD Critical Procedure 6/004.00 Transporting Prisoners, respectively. (ECF No. 37-9 at 2.) On October 3, 2018, Plaintiff appeared before the Discipline Board, which ultimately determined that Plaintiff would receive a "Disciplinary Transfer under the Discipline Decision Guide, Category A, first offense, aggravated." (*Id.* at 3.) On October 10, 2018, Plaintiff signed the "Adjudication of Complaint" noting the Board's findings and disciplinary decision. (*Id.* at 2.) The members of the Discipline Board did not include Benjamins. (*Id.*)

On November 3, 2018, Plaintiff was disciplinarily transferred from his assignment as a Detective in the Vice Unit to Patrolman. (ECF No. 37-1 at 19; ECF No. 1 at 5.)

---

[3]According to the EDS investigative report, this means that "EDS was unable to prove via a preponderance of the evidence that [Plaintiff] was sexually harassed or disparately treated by Sergeant Benjamins." (ECF No. 37-6 at 16.)

3

After receiving a notice of the right to sue from the Nevada Equal Rights Commission (ECF No. 1-3), Plaintiff filed the Complaint, asserting five claims against LVMPD: (1) gender discrimination; (2) retaliation; (3) hostile work environment; (4) IIED; and (5) negligent training and supervision (ECF No. 1).

Defendant filed a partial motion to dismiss the IIED and negligent training and supervision claims. (ECF No. 8.) In an oral ruling, the Court granted the motion to dismiss as to the negligent training and supervision claim and denied the motion as to the IIED claim.[4] (ECF No. 26.)

## III.  DISCUSSION

The Court addresses Defendant's Motion as to each of the remaining four claims: (1) gender discrimination; (2) retaliation; (3) hostile work environment; and (4) IIED.

### A.  Gender Discrimination

Title VII makes it unlawful for an employer to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin."[5] 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination, a plaintiff must prove: "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed [their] job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff."

---

[4] In their briefing on the Motion, both parties erroneously assert that the Court has yet to issue a decision on Defendant's partial motion to dismiss. (ECF No. 37 at 11; ECF No. 41 at 7.) But the Court plainly issued an oral ruling on the partial motion to dismiss on February 13, 2023. (ECF No. 26 (minutes of motion hearing).) The parties themselves even acknowledge at least four separate times in various filed stipulations that the motion to dismiss was "granted in part." (ECF No. 27 at 2; ECF No. 29 at 2; ECF No. 32 at 2; ECF No. 34 at 2.) The Court therefore disregards the parties' arguments on the negligent training and supervision claim and any Rule 12(b) dismissal arguments on the IIED claim.

[5] "Nevada looks to federal discrimination and retaliation cases for guidance in applying state law." *Curls v. Clark Cnty. Sch. Dist.*, Case No. 2:16-cv-00979-JAD-PAL, 2017 WL 1228409, at *2 (D. Nev. Mar. 31, 2017) (collecting cases). The Court therefore applies the corresponding federal Title VII standards to Plaintiff's gender discrimination, retaliation, and hostile work environment claims under Nevada state law.

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Here, Defendant does not dispute that sex is a protected class under Title VII or that a disciplinary transfer constitutes an adverse employment action. (ECF No. 37 at 15.) Defendant argues and points to evidence that Plaintiff fails on the remaining elements— that he performed his job satisfactorily and that Defendant treated him differently than a similarly situated employee who does not belong to the same protected class. (*Id.* at 15-17.) For instance, Plaintiff was found to be in violation of two LVMPD procedures, one of which was a "critical procedure" (ECF No. 37-9 at 2), and Plaintiff appears to have only offered anecdotal testimony of more favorable treatment of other male officers who are in his same protected class or unnamed officers whose gender is not identified and who are not necessarily similarly situated (ECF No. 37 at 17; ECF No. 37-1 at 21-22). Defendant thus meets its initial burden as the moving party on summary judgment, shifting the burden to Plaintiff. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) ("The burden of demonstrating the absence of an issue of material fact lies with the moving party. The opposing party must then 'present specific facts demonstrating that there is a factual dispute about a material issue.'").

Plaintiff however does not respond to any of Defendant's arguments as to his gender discrimination claim, let alone point to any evidence to demonstrate his satisfactory job performance or differential treatment compared to similarly situated employees not in his protected class. (*See* ECF No. 41 at 12-14 (summary judgment arguments only as to the hostile work environment and retaliation claims).) Accordingly, Plaintiff fails to meet his burden to raise a genuine issue of material fact as to the prima facie case of gender discrimination. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). The Court therefore grants Defendant's Motion as to Plaintiff's gender discrimination claim.

**B.     Retaliation**

A plaintiff "can establish a prima facie case by showing that: (1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). To establish causation, a plaintiff must show that "engaging in the protected activity was one of the reasons for [the adverse employment decision] and that but for such activity [he] would not have [suffered the adverse employment decision]." *Id.* at 1064-65 (citations and internal quotation marks omitted). Causation "may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (citation omitted).

If the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004). Once the employer carries this burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for retaliation. *See id.*

Defendant concedes that Plaintiff engaged in a protected activity through his filing of the April 11 SOC alleging sexual harassment and discrimination and that his disciplinary transfer constituted an adverse employment action. (ECF No. 37 at 23.) Defendant argues that the retaliation claim fails because Plaintiff cannot demonstrate a causal link between the protected activity and the adverse employment action. (*Id.*) Defendant meets its initial burden by pointing to evidence that: (1) the April 4 Contact Report and March 25 SOC were filed before Plaintiff's sexual harassment complaint filed in the April 11 SOC (ECF Nos. 37-2, 37-4, 37-8); (2) the April 23 SOC was only based on Plaintiff's misconduct occurring on April 17, 2018 (ECF No. 37-7); and (3) Benjamins was not part of the Discipline Board's decision to discipline Plaintiff, and the disciplinary decision was issued well after Plaintiff lodged his complaint (ECF No. 37-9).

Plaintiff counters that temporal proximity and the circumstances surrounding his discipline show a causal nexus. (ECF No. 41 at 14.) To the extent Plaintiff argues that he was only disciplined after Benjamins learned that he was considering bringing a sexual harassment claim against her and that LVMPD allowed her to recommend discipline against him and "resurrect an old complaint, after sitting on it for almost a month" (*id.*), the Court is not persuaded that that supports a finding of causal nexus. Plaintiff's consideration of bringing a sexual harassment claim is not the protected activity here, but rather his filing of the sexual harassment complaint itself, so April 11, 2018 is the relevant date for timing considerations. *See Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). Plaintiff appears to primarily refer to the March 25 SOC as the "old complaint" that Benjamins "resurrected" and initiated against him and another officer.[6] (ECF No. 41 at 14.) But as Defendant noted, that March 25 SOC was filed before Plaintiff engaged in protected activity via filing the April 11 SOC. Therefore, it cannot be asserted that LVMPD permitted Benjamins to recommend discipline against Plaintiff in the March 25 SOC in retaliation for protected activity which he had not engaged in yet.

More persuasively, Plaintiff also argues that, after he filed his sexual harassment complaint, LVMPD "closed ranks around Benjamins" and punished Plaintiff with the disciplinary transfer. (*Id.*) In terms of timing, although Benjamins filed the March 25 SOC before Plaintiff's sexual harassment complaint, the adjudication of the March 25 SOC, ultimately resulting in discipline, did not occur until after Plaintiff engaged in the protected activity. Moreover, Plaintiff points out that Benjamins at one point threatened to have him removed from the Vice Unit. (*Id.*) Plaintiff's declaration supports this contention that Benjamins threatened to "get [him] kicked out" and further asserts that Benjamins told him she was friends with other higher-ranking officers such as Buist who "would listen to her." (ECF No. 41-1 at 14, 15.) It is unclear when Benjamins made her threat, but drawing

---

[6]In his declaration, Plaintiff claims that Benjamins waited almost a month to file the March 25 SOC against him and Cognian. (ECF No. 41-1 at 14.) In addition, of the two relevant SOCs against Plaintiff, the March 25 SOC was the only one filed against another officer along with Plaintiff. (ECF No. 37-8 at 2-3.)

reasonable inferences in the light most favorable to Plaintiff as the non-moving party, the Court infers that it could have been made around the time of and in response to the sexual harassment complaint. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The Court also infers that Benjamins was in a position to and could have influenced higher-ranking officers to turn against Plaintiff and effectuate a disciplinary transfer, as she apparently threatened. "The amount of evidence that must be produced in order to create a prima facie case [for Title VII claims] is very little," *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (brackets, quotation marks, and citations omitted), and the Court finds that Plaintiff has proffered at least a little evidence of a causal nexus sufficient for the prima facie case.

Next, Defendant meets its burden to provide a legitimate, non-retaliatory reason for Plaintiff's disciplinary transfer, pointing to evidence that a neutral Discipline Board determined a transfer was warranted based on Plaintiff's sustained misconduct, not based on his complaint against Benjamins. (ECF No. 37 at 23-24; ECF No. 37-9.) The Discipline Board plainly found Plaintiff in violation of two LVMPD procedures, including a "critical policy" that raised "a huge safety concern" and for which Plaintiff did not appear to "really accept responsibility." (ECF No. 37-9 at 2-3.) The finding of the critical procedure violation arose from the April 23 SOC, which was not initiated by Benjamins, and Benjamins was not a member of the Discipline Board. (*Id.* at 2; ECF No. 37-7 at 3). Moreover, the LVMPD Discipline Board decision regarding Plaintiff's disciplinary transfer was not made until about six months after his sexual harassment complaint, which tends to show a lack of temporal proximity. (ECF No. 37-9 at 2.)

As to pretext, the Court considers the arguments and evidence Plaintiff proffered in support of the prima facie case, as well as additional arguments and evidence specific to pretext. *See Stegall*, 350 F.3d at 1069 ("While it is true that [the plaintiff] must 'produce evidence in addition to that which was sufficient for [their] prima facie case in order to rebut [the defendant]'s showing, it is improper to ignore the evidence in support of [the plaintiff]'s prima facie case."). While notable that Benjamins was not a member of the

8

Discipline Board, Benjamins need not have been on the Discipline Board for LVMPD to retaliate against Plaintiff for filing his sexual harassment complaint, particularly where there is evidence suggesting that Benjamins was friends with other higher-ranking officers whom she could influence. Suggesting pretext, Plaintiff points out and the evidence appears to show that Cognian, the other officer against whom the March 25 SOC was lodged, did not receive a disciplinary transfer despite similarly sustaining a violation of booking evidence and property procedures.[7] (ECF No. 37-8 at 2-3.) In addition, according to Plaintiff's declaration, Cognian was the officer responsible for making the property report for the arrest at issue in the March 25 SOC, which suggests that Cognian should have shouldered even greater culpability, if not at least equal culpability, compared to Plaintiff. (ECF No. 41-1 at 11.) This is corroborated by Benjamins's written account in the March 25 SOC that Cognian was assigned as the "primary detective" on the case with Plaintiff assigned "to assist." (ECF No. 37-8 at 3.)

While also true that Plaintiff was found to have committed another policy violation with his April 23 SOC conduct, viewing all the evidence in the light most favorable to Plaintiff, the Court finds that there are triable issues as to whether Plaintiff and Cognian were similarly situated to warrant comparison in the pretext analysis, whether Plaintiff's protected activity motivated at least in part Defendant's decision to discipline him, and thus whether Defendant's proffered reasons were pretext for retaliation. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1116 (9th Cir. 2011) ("[W]hether the other [employees] are similarly situated to [the plaintiff] is a question of fact."); *Stegall*, 350 F.3d at 1072-73 (noting that summary judgment is often inappropriate in Title VII cases because an "employer's true motive in an employment decision is rarely easy to discern" without a "searching inquiry" that is "most appropriately conducted by a factfinder, upon a full record"). Accordingly, the Court denies Defendant's Motion as to Plaintiff's retaliation claim.

---

[7] In fact, the evidence suggests that Cognian did not ultimately receive any discipline for this sustained violation, as around the time Plaintiff was disciplined in October 2018, Cognian's "sustained finding" was "reverted." (ECF No. 37-8 at 3.)

## C. Hostile Work Environment

"Title VII of the 1964 Civil Rights Act prohibits discrimination on the basis of sex, which includes sexual harassment in the form of a hostile work environment." *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 997 (9th Cir. 2010) (citations omitted). "To establish he was subjected to a hostile work environment, [the plaintiff is] required to prove that: (1) he was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment."[8] *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021) (citation omitted).

"A hostile work environment 'must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* at 648 (citation omitted). "To determine whether an environment is sufficiently hostile or abusive to violate Tile VII, we consider 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (citations omitted).

Defendant first argues that Benjamins's alleged conduct was not harassing or based on Plaintiff's gender. (ECF No. 37 at 18-19.) Defendant provides the context for multiple alleged incidents of sexual harassment and points to Plaintiff's testimony, Benjamins's testimony, and officer witness testimony obtained as part of the EDS investigation to support its argument. (*Id.* at 19-21.) Defendant also argues that Plaintiff's delays in promptly reporting Benjamins's behavior after each alleged incident and failure to tell Benjamins directly that he was uncomfortable indicates that the alleged conduct

---

[8]In addition, a plaintiff is required to establish that "the employer is liable for the harassment that caused the environment." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (citations omitted). Plaintiff argues that Defendant is liable for Benjamins's conduct because she was his supervisor. (ECF No. 41 at 13.) Defendant does not appear to respond to or dispute this assertion, and the Court agrees with Plaintiff. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.").

was not harassing, unwelcomed, or sufficiently severe to alter the conditions of employment. (*Id.* at 19-22.)

Plaintiff counters that he was "subject to repeated and unwanted sexual suggestions by his supervisor which would be offensive to a reasonable person and which he found offensive" and that the conduct was pervasive and severe such that he "felt trapped" into "accepting the harassment in order to maintain his career." (ECF No. 41 at 13.) Plaintiff points to his declaration, which details an account spanning at least several months of Benjamins's multiple sexually suggestive comments and conduct towards and about Plaintiff that made him "very uncomfortable." (ECF No. 41-1 at 5, 7, 9-10.) Plaintiff testified that Benjamins's verbal conduct of a sexual nature eventually became physical, including Benjamins "stroking [his] leg and on at least two occasions touching [his] penis and scrotum through [his] clothing, once with force which caused [him] pain." (*Id.* at 10.) Plaintiff's declaration testimony is corroborated by his allegations of Benjamins's "nut-tapping" contained in the April 11 SOC (ECF No. 37-4 at 5-6) and by the deposition testimony of a fellow officer who testified that on one occasion he witnessed Benjamins "touch [Plaintiff]'s knee and kind of drag her hand up to his thigh and over his crotch, over his penis" and Plaintiff's body visibly tensed in response[9] (ECF No. 41-5 at 8).

Based on the foregoing, the Court finds that Plaintiff has provided sufficient evidence for a reasonable juror to find that he was subjected to unwelcome, verbal and physical conduct of a sexual nature that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Viewing the evidence in the light most favorable to Plaintiff as the non-moving party, any purported delay in reporting the harassing incidents or failure to communicate his discomfort to Benjamins on the spot does not necessarily mean that Plaintiff did not find such conduct to be offensive or unwelcome and is in fact consistent with an abusive working environment in which a subordinate employee feels compelled to endure continued

---

[9]Defendant's reply does not address this officer's deposition, but Benjamins's deposition testimony indicates that when asked if she had ever engaged in such behavior, Benjamins responded "no" and "I don't recall." (ECF No. 41-4 at 14.)

harassment from a supervisor. Because genuine disputes of material fact exist as to Plaintiff's hostile work environment claim, the Court denies Defendant's Motion as to this claim.

### D. IIED

"The elements of a cause of action for intentional infliction of emotional distress are '(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.'" *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (citation omitted). To establish severe emotional distress, the plaintiff must demonstrate that "the stress [is] so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983)). "General physical or emotional discomfort is insufficient to demonstrate severe emotional distress." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (citing *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993)).

Defendant argues that Plaintiff did not present any persuasive evidence that he suffered some physical manifestation of emotional distress and that his alleged emotional distress is not supported by any objectively verifiable facts which indicate the severity of his emotional distress. (ECF No. 37 at 14.) In response, Plaintiff does not point to any evidence but argues that "whether a plaintiff suffered distress sufficient for the recovery of damages is a question for the trier of fact." (ECF No. 41 at 12.) But on summary judgment, Plaintiff must still provide sufficient evidence from which a reasonable juror could find he suffered severe or extreme emotional distress for this claim.

Moreover, Plaintiff's declaration includes some general mentions of emotional distress, but they alone are insufficient to survive summary judgment. In the declaration, Plaintiff states that he has not sought mental health care but "[i]t has been six and a half years of pain, anxiety, sleepless nights, depression and anguish" and that if LVMPD had taken proper action, he "would not have been so depressed that [his] girlfriend left and

would not have lost [his] chance at having a family" or have the "mental injuries that [he] is] now forced to live with every day." (ECF No. 41-1 at 16-18.) Plaintiff has not provided any "objectively verifiable indicia of the severity of his emotional distress," as required to survive summary judgment under Nevada law. *See Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) (finding plaintiff failed to point to any evidence demonstrating he suffered from severe or extreme emotional distress where "although [the plaintiff] stated in his deposition that he was depressed for some time, he did not seek any medical or psychiatric assistance [and] presented no objectively verifiable indicia of the severity of his emotional distress"); *cf. Watson v. Las Vegas Valley Water Dist.*, 268 F. App'x 624, 626-27 (9th Cir. 2008) (affirming grant of summary judgment in favor of defendant on Nevada IIED claim where plaintiff mentioned she sought counseling from a doctor in response to an interrogatory, but there was "no evidence regarding the nature of [that doctor]'s diagnosis or treatment, if any").[10]

Plaintiff's evidence of emotional distress ultimately fails to rise above general emotional or physical discomfort, which is insufficient to demonstrate severe or extreme emotional distress. *See Burns*, 175 F. Supp. 2d at 1268; *Watson v. Las Vegas Valley Water Dist.*, 378 F. Supp. 2d 1269, 1279 (D. Nev. 2005), *aff'd*, 268 F. App'x 624 (9th Cir. 2008). The Court therefore finds that Plaintiff has failed to raise a genuine issue of material fact as to whether he suffered severe emotional distress. *See Miller*, 970 P.2d at 577 ("We conclude that [the plaintiff]'s brief depositional testimony regarding depression was insufficient to raise a genuine issue of material fact as to whether he suffered severe

---

[10]While Plaintiff's declaration states that he "ha[s] not sought out mental health care" (ECF No. 41-1 at 17), Plaintiff's deposition testimony proffered by Defendant does include a single mention of Plaintiff having spoken to one "[t]herapist/counselor" as a result of Benjamins's conduct (ECF No. 37-1 at 23). Regardless, that single mention of counseling sought is insufficient without any evidence regarding any diagnosis or treatment by that therapist. *See Watson*, 268 F. App'x at 627 (similar analysis).

emotional distress."). Accordingly, the Court grants Defendant's Motion as to Plaintiff's IIED claim.[11]

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 37) is granted in part and denied in part, as specified herein. The motion is granted as to Plaintiff's gender discrimination and IIED claims and denied as to Plaintiff's retaliation and hostile work environment claims.

It is further ordered that, under LR 16-5, the Court finds it appropriate to refer this case to United States Magistrate Judge Elayna J. Youchah to conduct a settlement conference, and the case is so referred. If the parties do not settle, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 17th Day of July 2024.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[11]The Court briefly notes that Defendant also argued that Plaintiff's IIED claim is barred because it is based on the same alleged unlawful employment practices as his discrimination claim and his exclusive remedy for claims based upon an unlawful employment practice is through NRS § 613.330 *et seq.* (ECF No. 37 at 14-15.) The Court rejects this argument, as it is not squarely supported by Nevada law. *See Dossat v. F. Hoffmann-La Roche Ltd.*, 600 F. App'x 513, 514 (9th Cir. 2015) (citing *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (upholding a jury verdict in favor of an employee who brought an intentional infliction claim against her former employer based on the employer's personnel management actions) and *Shoen v. Amerco, Inc.*, 896 P.2d 469, 476 (Nev. 1995) (rejecting defendant-employer's "argument that Nevada does not recognize an action for intentional infliction of emotional distress in the employment context")).